UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-21549-CIV-HUCK/BANDSTRA

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

    Plaintiff,

v.

ALLEN E. WEINTRAUB and AWMS
ACQUISITION, INC. d/b/a Sterling
Global Holdings,

    Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

    THIS MATTER is before the Court on Plaintiff United States Securities and Exchange Commission's ("SEC") Motion for Summary Judgment (D.E. # 46), filed December 8, 2011. This case arises out of allegations that Defendants Allen E. Weintraub and AWMS Acquisition, Inc. d/b/a Sterling Global Holdings ("Sterling Global") made materially false or misleading statements and omissions in connection with the proposed purchase of all existing stock of two large, multinational corporations. In its Motion for Summary Judgment, the SEC argues that there is no genuine dispute as to any material fact regarding the liability of Mr. Weintraub for violating antifraud provisions of federal securities law. The Court has reviewed the Motion, the parties' memoranda, pertinent portions of the record, and is duly advised in the premises. For the reasons discussed below, the Court grants the Motion for Summary Judgment.

**I.    UNDISPUTED FACTS**[1]

---

[1]     Mr. Weintraub has offered no affidavit, declaration, or other evidence in opposition to the SEC's Statement of Material Facts as to Which There is No Genuine Issue (D.E. # 47) ("Statement") as required by Local Rule 56.1(a). The SEC has amply supported its Statement with competent evidence. Mr. Weintraub has also failed to controvert the SEC's Statement. Pursuant to Local Rule 56.1(b), "a[ll] material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing

On March 19, 2011, Mr. Weintraub, the sole owner, officer, director, and employee of Sterling Global, an inactive Florida corporation, emailed a written offer letter to various board members, officers, and public relations representatives of the Eastman Kodak Company ("Kodak") to purchase all its "outstanding stock" for a price of $4.81 cash per share, or approximately $1.3 billion. The purchase price represented a 46 percent premium over Kodak's March 18, 2011 closing price. The offer letter was signed "A. Weintraub," and was composed on Sterling Global letterhead that listed the cities of Atlanta, Cleveland, Denver, Dubai, London, Los Angeles, Miami, New York, and Tel Aviv as places where Sterling Global maintained a corporate presence. The offer letter also stated that Mr. Weintraub was "copying all large shareholders [of Kodak] with the same offer, in an effort to acquire majority control . . . ." Minutes before emailing the offer letter to Kodak, Mr. Weintraub emailed it to various reporters at Dow Jones, Bloomberg, and the Rochester Democrat and Chronicle. Mr. Weintraub had subsequent conversations with reporters from various media outlets about the "discussions" being held between Sterling Global and Kodak. Mr. Weintraub also emailed the offer letter to large institutional shareholders of Kodak, including Legg Mason Capital, Blackrock, Inc., Fidelity Management & Research, The Vanguard Group, and Investment Partners Asset Management. Kodak did not respond to Mr. Weintraub's offer letter.

On March 29, 2011, Mr. Weintraub emailed a substantially similar offer letter to AMR Corporation ("AMR"), the parent company of American Airlines. The AMR offer letter proposed to purchase all "outstanding stock" of AMR for $9.75 cash per share, or approximately $3.25 billion. The offer price represented a 48 percent premium over AMR's then closing price. In the offer letter, Mr. Weintraub stated "Attached is our tender offer to take AMR private. Please review. I beleive [sic] as a large shareholder this is in the best interest for all our shareholders and management." Also on March 29, 2011, Mr. Weintraub emailed the AMR offer letter to numerous media outlets including KDAF-TV, NBC5, WFAA-TV, NBC affiliate KXAN, Telemundo, CNBC, the Dallas Morning News, and the Fort Worth Star Telegram. Mr. Weintraub later represented in press interviews that he had the backing of "several large institutions," and had previously done similarly-sized deals. Mr. Weintraub also stated that he had conversations with major AMR shareholders who wanted him to proceed with the takeover. The daily trading volume of AMR shares rose from 5 million on March 29, 2011 to 31.5 million on March 30, 2011, despite there being no other airline industry news. AMR, however, did not respond to Mr. Weintraub's offer letter. Neither Mr.

---

party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. R. 56.1(b).

Weintraub nor Sterling Global completed the legal filing requirements applicable to tender offers, and did not otherwise submit formal tender offers to either Kodak or AMR.

Prior to submitting the offer letters to Kodak and AMR, Mr. Weintraub entered the local branches of Citi Personal Wealth Management, UBS Financial Services, and Wells Fargo Advisors to solicit respective loans of $3 billion, $3.5 billion, and $1.3 billion. Each bank informed Mr. Weintraub that they were not interested in establishing a business relationship. At no point did Mr. Weintraub obtain any letter of credit or other written financing agreement. Mr. Weintraub also never retained legal counsel or an investment banking advisor to assist with the proposed transactions.

Additionally, Mr. Weintraub did not disclose several aspects of his personal background prior to submitting the offer letters to Kodak and AMR, or in his subsequent communications with shareholders and members of the press. Specifically, Mr. Weintraub never disclosed that in 2008 he had pled guilty to two felony counts of organized fraud and one count of felony money laundering, and that he was on probation when he submitted the offer letters to Kodak and AMR. He also did not disclose that in 2002 this Court permanently enjoined him from acting as an officer or director of any public company as a result of a previous violation of federal securities law. *See SEC v. Florida Stock Transfer, Inc.*, Case No. 02-23048-CIV (S.D. Fla. Nov. 4, 2002) (order of permanent injunction). Mr. Weintraub also failed to disclose that he has yet to satisfy a judgment of $1,050,000 entered against him by this Court for previous violations of federal securities law. In addition, Mr. Weintraub withheld information that he had filed for bankruptcy in 2007, and that his primary residence was foreclosed in 2008. Mr. Weintraub also did not divulge that on September 24, 2010, the Division of Corporations of the Florida Department of State administratively dissolved Sterling Global for failing to file its annual report.

**II.   THE SEC'S COMPLAINT**

The SEC commenced the instant action on May 3, 2011. The Complaint (D.E. # 1) alleges two claims: (1) violation of section 10(b) of the Securities and Exchange Act ("SEA") [15 U.S.C. § 78j(b)] and SEC rule 10b-5 [17 C.F.R. § 240.10b-5], and (2) violation of SEA section 14(e) [15 U.S.C. § 78n(e)] and SEC rule 14e-8 [17 C.F.R. § 240.14e-8(a)-(c)]. The SEC alleges that Mr. Weintraub violated antifraud provisions of federal securities laws by making materially false or misleading statements and omissions regarding (1) his ability secure financing and complete the Kodak and AMR deals, and (2) his own background. The SEC is asking the Court to: (1) permanently restrain and enjoin Mr. Weintraub from committing further violations of

3

sections 10(b) and 14(e) of the SEA, and rules 10b-5 and 14e-8 thereunder; (2) permanently restrain and enjoin Sterling Global from committing further violations of sections 10(b) and 14(e) of the SEA, and rules 10b-5 and 14e-8 thereunder; (3) order Mr. Weintraub and Sterling Global each to pay a civil penalty pursuant to 15 U.S.C. §§ 77t(d), 78u(d)(3). On July 21, 2011, the Clerk of the Court entered a default against Sterling Global for failing to appear or otherwise plead the complaint (D.E. # 16). The SEC now moves for summary judgment against Mr. Weintraub on both its section 10(b) and 14(e) claims.

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law, and might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if a rational trier of fact may find for the non-moving party based on the record taken as a whole. *Allen*, 121 F.3d at 646. In determining whether summary judgment is appropriate, facts and inferences from the record are viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009); *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1374 (11th Cir. 1996).

The movant bears the initial responsibility of informing the Court of the basis for its motion, and the particular parts of the record demonstrating that no genuine issue as to a material fact exists. Fed. R. Civ. P. 56(c)(1)(A). The opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Celotex*, 477 U.S. at 322. If the non-moving party fails to make a sufficient showing on an essential element of the case, or proffers only conclusory allegations, conjecture, or evidence that is merely colorable and not significantly probative, the moving party is entitled to summary judgment. *Id.*; *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

### IV. ANALYSIS

#### A. Alleged Violations of SEA Section 10(b) and SEC Rule 10b-5

4

The SEC alleges in its first claim that Mr. Weintraub violated section 10(b) of the SEA and SEC rule 10b-5.[2] To establish a violation section 10(b) and rule 10b-5, a plaintiff must prove (1) a materially false or misleading statement or omission, (2) in connection with the purchase or sale of a security, (3) made with scienter. *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007) (citing *Aaron v. SEC*, 446 U.S. 680, 695 (1980)). However, the SEC, unlike a private plaintiff, need not allege or prove reliance, causation, or damages to establish a violation of section 10(b). *See id.*; *SEC v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985) ("Unlike private litigants seeking damages, the [SEC] is not required to prove that any investor actually relied on the misrepresentation or that the misrepresentations caused any investor to lose

---

[2] Section 10(b) of the SEA provides in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). SEC rule 10b-5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

5

money."). For the reasons discussed below, the Court finds that the SEC has demonstrated that it is entitled to summary judgment as to its section 10(b) and rule 10b-5 claim.

### 1. *Materially False or Misleading Statements or Omissions*

To determine whether the SEC has satisfied the first element of its section 10(b) and rule 10b-5 claim, the Court must undertake a two-step inquiry. First, the Court must ascertain whether Mr. Weintraub made any false or misleading statements or omissions. Second, the Court must determine whether those false or misleading statements or omissions, if made, were material to the transaction at issue. The Court finds that the SEC has demonstrated that Mr. Weintraub did made false or misleading statements and omissions, and that these statements and omissions were material to the transaction at issue.

The undisputed facts demonstrate that Mr. Weintraub made numerous false or misleading statements and omissions regarding: (1) his and Sterling Global's ability and intention to consummate the deals with Kodak and AMR, (2) his personal background, (3) his ownership of stock in AMR, and (4) his representations to media outlets. First, the offer letters Mr. Weintraub sent to Kodak and AMR in March 2011 created the misleading impression that Sterling Global was poised to purchase these companies, and had the means and ability to finance the proposed multi-billion dollar acquisitions. This impression was false because Mr. Weintraub and Sterling Global did not have the financial means or ability to complete the deals. Specifically, Mr. Weintraub and Sterling Global had substantially no assets, and lacked the resources to complete the purported tender offers. Statement, ¶¶ 7-9, 46-47. None of the banks that Mr. Weintraub approached agreed to provide financing of any kind, and neither Mr. Weintraub nor Sterling Global arranged for any alternative financing. *Id*. ¶¶ 48-50. Moreover, Sterling Global was dissolved by the State of Florida in 2010 for failing to file its required annual report. *Id*. ¶ 11.

Second, the Kodak and AMR offer letters were also misleading because they contained false or misleading statements or omissions regarding Mr. Weintraub's background. Neither Mr. Weintraub's Kodak and AMR offer letters, nor any of his subsequent communications, disclosed that he was convicted of criminal fraud and larceny as recently as 2008, and was on probation in the State of Florida. *Id*. ¶¶ 2-3. Nor did Mr. Weintraub disclose that he is subject to an injunction by this Court barring him from acting as an officer or director of a public corporation. *Id*. ¶ 4. Mr. Weintraub also withheld the information that he filed for personal bankruptcy in

2007, and has yet to pay a non-dischargeable judgment in favor of the SEC for $1,050,000. *Id*. ¶¶ 5-6, 8.

Third, the SEC demonstrates that Mr. Weintraub made false or misleading statements regarding his ownership of AMR stock in an effort to bolster the credibility of his proposed deals. He told representatives of three different banks that he owned four to five percent of a public airline company that he wanted to take private, and specifically identified AMR as the company to one bank representative. *Id*. ¶¶ 12, 16, 20. In the March 29, 2011 email transmitting his offer letter to representatives of AMR, Mr. Weintraub also stated that "I beleive [sic] as a large shareholder this is in the best interest for all our shareholders and management."[3] *Id*. ¶ 36. However, neither Mr. Weintraub nor Sterling Global owned AMR stock. *Id*. ¶ 37.

Fourth, Mr. Weintraub made false or misleading statements to media outlets during his efforts to publicize his proposed deals. On March 29, 2011, Mr. Weintraub told a reporter from the Dallas Morning News that Kodak had responded to his purported tender offer and that he was in "discussions" with Kodak regarding the deal. *Id*. ¶ 39. Mr. Weintraub also informed the reporter that he had obtained more than $3.25 billion to finance his offer for AMR, which was backed by "several large institutions." *Id*. Mr. Weintraub also represented to the reporter that he could produce letters of credit to AMR "within five minutes." *Id*. Also on March 29, 2011, Mr. Weintraub sent an email to a reporter at NBC 5 in Dallas stating that "If AMR needs proof of funds, our bank will provide what ever [sic] proof they require." *Id*. ¶ 40. On March 30, 2011, Mr. Weintraub sent an email to a reporter from NBC Universal stating "Yes on financing" in response to the reporter's question "Do you have financing for [the AMR] offer?" *Id*. ¶ 41. In light of the evidence presented, the Court finds that the SEC has met its initial burden under Fed. R. Civ. P. 56(c) of demonstrating that Mr. Weintraub made false or misleading statements and omissions.

---

[3] In his Response, Mr. Weintraub contends that he "never made any representation to anyone of any ownership in either company, nor [sic] can the SEC provide any proof, that such a claim was made, other than here say [sic] statements." Def. Resp. (D.E. #54), ¶ 9. Yet in the first set of the SEC's Requests for Admissions, Mr. Weintraub responded "Admit" to question 15, which asked if the AMR email containing the representation that he was "a large shareholder" was true and accurate. *See* Ex. 5 (D.E. # 48-5), ¶ 15; Ex. 6 (D.E. # 48-6), ¶ 15. Mr. Weintraub has not subsequently submitted any evidence refuting the validity of the SEC's assertion or his admission.

The Court now proceeds to determine whether these false statements and omissions were material. The test for materiality is whether there is a substantial likelihood that a reasonable investor would have believed the false or misleading statement or omission was important in deciding whether to purchase, sell, or hold securities. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *SEC v. Kirkland*, 521 F. Supp. 2d 1281, 1303 (M.D. Fla. 2007). The issue of materiality may be decided as a matter of law where, as here, "it is so plain that reasonable minds could not differ." *Schultz v. Applica, Inc.,* 488 F. Supp. 2d 1219, 1226 (S.D. Fla. 2007) (citing *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1189 (11th Cir. 2002)).

The SEC contends, and the Court agrees, that Mr. Weintraub's false or misleading statements and omissions regarding the purported tender offers are material under this standard. The Kodak and AMR offer letters, and Mr. Weintraub's statements to the media claiming that Sterling Global had the ability to finance the acquisitions, gave the impression that the purported offers were serious and could be relied upon by investors. News of a tender offer is generally considered material in that a successful tender offer could lead to a significant corporate event. *See Basic Inc. v. Levinson*, 485 U.S. 224, 238-39 (1988). The mere announcement of a proposed tender offer is material because it indicates to investors that they may have the opportunity to sell their shares at a premium. "It is well established that information concerning a tender offer or a proposed merger may be material to persons who trade in the securities of the target company, despite the highly contingent nature of both types of transactions." *Semerenko v. Cendant Corp.*, 223 F.3d 165, 177 (3rd Cir. 2000) (collecting cases).

Without citing to any case, Mr. Weintraub argues that "there is no Rule [sic] that requires disclosure of background [sic] of any individual" and that "the background of a company or an individual is not a requirement within any rule, nor has the SEC provided any proof that it is a requirement." Def. Resp., ¶¶ 2, 8. The Court finds that Mr. Weintraub's argument is inapposite, and his conclusory statement unpersuasive. Mr. Weintraub's false statements and omissions regarding his background are indeed material to establishing a violation of section 10(b) and rule 10b-5. Mr. Weintraub's statements regarding his ability to obtain financing, and his omission of key facts regarding his background further bolstered the impression that Sterling Global's offers for Kodak and AMR were serious, and could be relied upon by investors. Courts have repeatedly found the failure to disclose bankruptcies and court orders—such as those entered against Mr. Weintraub—to be material omissions in securities fraud enforcement actions. *See,*

8

*e.g., Merchant Capital*, 483 F.3d at 770-71 (the failure to disclose management's personal bankruptcy and a previous cease and desist order, which prohibited the sale of unregistered securities, were material omissions); *SEC v. Carriba Air Inc.*, 681 F.2d 1318, 1323 (11th Cir. 1982) (the failure to disclose the bankruptcy of a company was a material omission); *Kirkland*, 521 F. Supp. 2d at 1303 (the failure to disclose "desist and refrain" orders entered against management were material omissions); *SEC v. Prater*, 289 F. Supp. 2d 39, 52-53 (D. Conn. 2003) (the failure to disclose a firm principal's convictions for fraud would be a material omission); *Siemers v. Wells Fargo & Co.*, No. C05-04518-WHA, 2007 WL 1140660, at *8 (N.D. Cal. Apr. 17, 2007) (stressing the materiality of information indicating management's lack of integrity). Accordingly, the SEC has also met its initial burden under Fed. R. Civ. P. 56(c) of demonstrating that Mr. Weintraub's false or misleading statements and omissions were material to the transaction at issue.

The burden now shifts to Mr. Weintraub to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *Celotex*, 477 U.S. at 322. It is incumbent upon Mr. Weintraub to present affirmative evidence that either contravenes the evidence submitted by the SEC, or otherwise demonstrates the existence of a question of material fact.

Mr. Weintraub has not, however, offered any affidavit, declaration, or other evidence refuting any of the SEC's factual assertions. Moreover, Mr. Weintraub refused to answer virtually all of the SEC's deposition questions, interrogatories, and questions regarding his earlier admissions based on his Fifth Amendment privilege against self-incrimination.[4] The

---

[4] In its Supplemental Memorandum (D.E. # 53), the SEC outlines the occasions on which Mr. Weintraub asserted his Fifth Amendment privilege against self-incrimination. Mr. Weintraub specifically refused to respond to the SEC's deposition questions regarding, *inter alia*; his and Sterling Global's ability to finance the proposed Kodak and AMR stock purchases; how he intended to finance the Kodak and AMR offers; the identity of any banks or other parties who agreed to provide financing; who drafted the Kodak and AMR offer letters; what due diligence he performed prior to sending the offer letters; whether he retained any legal counsel, bankers, or accountants to assist with the proposed Kodak and AMR offers; his and Sterling Global's net worth as of March 18, 2011 and March 29, 2011; what experience would qualify him to acquire and run Kodak and AMR; his purchases, sales, or holdings of Kodak and AMR securities; whether he sent an April 26, 2011 email to Kodak; the identification of any bank accounts; the identification of any brokerage accounts other than the E*Trade and Morgan Stanley accounts he previously disclosed. *See* Pl. Supp. Mem., at 3-4.

Court may, and does, draw adverse inferences for Mr. Weintraub's invocation of his Fifth Amendment right, particularly in view of compelling, independent evidence submitted by the SEC. *SEC v. Colello*, 139 F.3d 674, 677-78 (9th Cir. 1998) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *SEC v. Monterosso*, 746 F. Supp. 2d 1253, 1261-62 (S.D. Fla. 2010); *FTC v. Global Marketing Group, Inc.*, 594 F. Supp. 2d 1281, 1287-89 (M.D. Fla. 2008). Because Mr. Weintraub has not offered any affirmative evidence to refute or contravene the SEC's factual assertions as required by Fed. R. Civ. P. 56(e) and the Local Rule 56.1(a), the Court finds that Mr. Weintraub did make materially false or misleading statements and omissions in connection with his proposed Kodak and AMR deals. The SEC has therefore satisfied the first element of its section 10(b) and rule 10b-5 claim.

### 2. *Connection with the Purchase or Sale of a Security*

The SEC must next demonstrate that Mr. Weintraub's materially false or misleading statements and omissions were made "in connection with the purchase or sale of a security." This requirement is accorded a broad interpretation. *See SEC v. Wolfson*, 539 F.3d 1249, 1262 (10th Cir. 2008) ("The Supreme Court has consistently embraced an expansive reading of §10(b)'s 'in connection with' requirement."). To meet this requirement, the SEC does not have to prove that a defendant actually participated in a securities transaction himself. Rather, the "in connection with" requirement is met "simply by showing that the misrepresentations in question were disseminated to the public in a medium upon which a reasonable investor would rely, and that they were material when disseminated." *Semerenko*, 223 F.3d at 175-76 (misrepresentations made by an offeror as part of an unsuccessful tender offer would meet the "in connection with" requirement of section 10(b) and rule 10b-5 if material); *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860-62 (2d Cir. 1968) (misrepresentations are made "in connection with" securities trading "whenever [such] assertions are made . . . in a manner reasonably calculated to influence the investing public").

---

Mr. Weintraub also refused to answer questions regarding the SEC's Requests for Admission during his deposition, including: the basis for his denial that he was the sole owner, officer, director and employee of AWMS Acquisition, Inc.; the basis for his denial that he sent the Kodak offer letter to Zacks Investment Research; the basis for his denial that he sent the AMR offer letter to the Dallas Morning News; the basis for in his response admitting in part and denying in part that neither he nor Sterling Global had the resources required to finance the proposed acquisitions of Kodak and AMR. *See id.* at 4-5.

The undisputed facts show that Mr. Weintraub emailed letters to Kodak and AMR purporting to make offers to purchase all of their outstanding stock. Statement, ¶¶ 24, 35. It is also undisputed that Weintraub sent copies of the offer letters to large shareholders and numerous news outlets and investment research firms in an effort to publicize his offers for Kodak and AMR. Mr. Weintraub further publicized the purported tender offers in subsequent telephone and email communications with reporters. *Id*. ¶¶ 28-30, 38-41. These facts are sufficient to meet the "in connection with" requirement of the SEC's section 10(b) and rule 10b-5 claim. *See Semerenko*, 223 F.3d at 175-76; *Texas Gulf Sulphur*, 401 F.2d at 860-62.

### 3. Scienter

Lastly, a plaintiff must adequately demonstrate scienter—the "intent to deceive, manipulate or defraud"—to prevail on a section 10(b) and rule 10b-5 claim. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1264 (11th Cir. 2006). "To act intentionally means to act deliberately, rather than mistakenly or inadvertently." *SEC v. Chem. Trust*, No. 00-8015-CIV, 2000 WL 33231600, at *10 (S.D. Fla. Dec. 19, 2000). In the Eleventh Circuit, scienter may be established by a defendant's acts that either demonstrate (1) knowing misconduct, or (2) a reckless disregard. *See Carriba Air*, 681 F.2d at 1324. To determine scienter, the Court examines all allegations in aggregate rather than single allegations in isolation. *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1016-17 (11th Cir. 2004). Evidence of conscious misbehavior, even circumstantial evidence, supports a finding of scienter where a defendant knew of, or recklessly disregarded, the falsity of his statements. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 278-79 (3d Cir. 2006). Severe recklessness is "limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Garfield*, 466 F.3d at 1264; *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 n.18 (11th Cir. 1999) (quoting *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989)). "An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir.

1996) (quoting *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256, 259 (S.D.N.Y. 1989)).

A defendant engages in knowing misconduct when he creates documents he knows are false. *See, e.g., Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 99-101 (2d Cir. 2001); *Kirkland*, 521 F. Supp. 2d at 1303-04 (defendant acted with scienter when he created fake leases and recruited friends to pretend to be satisfied investors). Similarly, a defendant engages in knowing misconduct when he fails to disclose the true facts of a transaction. *See SEC v. Espuelas*, 579 F. Supp. 2d 461, 482 (S.D.N.Y. 2008). Here, the undisputed facts demonstrate that Mr. Weintraub engaged in knowing misconduct when he sent the Kodak and AMR offer letters, and made other materially false or misleading statements regarding his purported offers to acquire these companies. As discussed above, Mr. Weintraub composed and sent Kodak and AMR letters offering to buy all outstanding stock—offers worth approximately $4.55 billion—despite not having any material assets or having secured any third-party financing. Mr. Weintraub also made materially false or misleading statements and omissions when representing his financial position and background, as well as that of Sterling Global.

Given that all of these false or misleading statements and omissions involve information within Mr. Weintraub's personal knowledge, the Court finds that his misconduct could not have been inadvertent or the result of a mistake. No reasonable person could have believed that their purported offers to acquire Kodak and AMR for billions of dollars at above-market prices without any funds, financing, or professional services, were made in good faith. *See SEC v. Infinity Grp. Co.*, 212 F.3d 180, 192-93 (3d Cir. 2000) (scienter exists where "even a complete neophyte in finance, accounting, or economics" would have suspected that valuing a bankrupt railroad's bond at $107 million was not proper). The presence of scienter is further confirmed by the fact that Mr. Weintraub repeated many of these materially false or misleading statements and omissions to the SEC staff during its investigation in an apparent effort to cover up his wrongdoing. Statement, ¶ 51. Mr. Weintraub's false assertion that he had financing after being investigated by the SEC, and his misrepresentation of the status of the SEC investigation to Kodak and AMR, also supports a finding that Mr. Weintraub's conduct was intentional. *Id*. ¶¶ 53-54. Scienter is also demonstrated because Mr. Weintraub's omitted that he: (1) had previously pled guilty to criminal fraud and larceny, (2) was on probation in the State of Florida, (3) was subject to an injunction barring him from acting as an officer or director of a public

12

corporation, (4) had filed for personal bankruptcy, and (5) has an outstanding, non-dischargeable judgment in favor of the SEC for $1,050,000. All of these facts were personally known to Mr. Weintraub. His intentional failure to disclose this information further confirms that he acted with scienter.

Mr. Weintraub submits that he "never violated any sections of 10 (B) or 10 (B) (5) [sic]" and that "[t]here were no misrepresentations or omissions made." Def. Resp., ¶ 7. However, as the Court previously noted, Mr. Weintraub has not submitted any evidence in support of his professed innocence. This conclusory statement is legally insufficient to defeat the SEC's properly supported motion for summary judgment. *See Celotex*, 477 U.S. at 322; *Evers*, 770 F.2d at 986. Because Mr. Weintraub has not presented affirmative evidence as required by the Federal Rules of Civil Procedure and the Court's Local Rules, there exists no genuine issue as to any martial fact triable by a finder of fact. Accordingly, the SEC is entitled to judgment as a matter of law on its section 10(b) and rule 10b-5 claim.

### B. Alleged Violations of SEA Section 14(e) and SEC Rule 14e-8

The SEC also argues that it is entitled to summary judgment as to its second claim, Mr. Weintraub's alleged violations of the antifraud provisions of section 14(e) of the SEA and SEC rule 14e-8. Section 14(e) added a broad antifraud prohibition for tender offers that was modeled on the antifraud provisions of section 10(b) and rule 10b-5. *See Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 10 (1985); C*hris-Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 362 (2d Cir. 1973). Section 14(e) states in pertinent part:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

15 U.S.C. § 78n(e). The SEC has provided notice that "[c]ommunications that are made at any time will be subject to the antifraud provisions of Rule 10b-5 under the Exchange Act, as well as to the antifraud provisions of Rule 14a-9 and Section 14(e) if a transaction involves the proxy or tender offer rules respectively." *Gas Natural v. E.ON AG*, 468 F. Supp. 2d 595, 609 (S.D.N.Y.

13

2006) (quoting Regulation of Takeovers and Security Holder Communications, Exchange Act Release No. 34-42055, 1999 WL 969596, at *46 (Oct. 22, 1999)).

SEC rule 14e-8 defines fraud in connection with pre-commencement tender offer announcements.  Rule 14e-8 states:

> It is a fraudulent, deceptive or manipulative act or practice within the meaning of section 14(e) of the Act (15 U.S.C. § 78n) for any person to publicly announce that the person (or a party on whose behalf the person is acting) plans to make a tender offer that has not yet been commenced, if the person:
>
> (a) Is making the announcement of a potential tender offer without the intention to commence the offer within a reasonable time and complete the offer;
>
> (b) Intends, directly or indirectly, for the announcement to manipulate the market price of the stock of the bidder or subject company; or
>
> (c) Does not have the reasonable belief that the person will have the means to purchase securities to complete the offer.

17 C.F.R. § 240.14e-8.

The SEC contends, and Mr. Weintraub admits, that neither Sterling Global nor Mr. Weintraub submitted a formal tender offer to either Kodak or AMR.  Statement, ¶ 45; Def. Resp., ¶ 5 ("The letters presented to both Kodak and AMR [ ] were merely preliminary introductions to a possible future offer if an agreement can consummate.").  Accordingly, the tender offer letters and Mr. Weintraub's related communications were pre-commencement communications that fall under rule 14e-8.

The undisputed facts establish that Mr. Weintraub violated section 14(e) and rule 14e-8. As discussed above, Mr. Weintraub sent the Kodak and AMR letters on behalf of Sterling Global despite having no significant assets, no funds on hand, no other financing, and no professional services engaged to complete the purported offers.  It is also undisputed that Mr. Weintraub made materially false and misleading statements and omissions as to his background and the true nature of the Kodak and AMR deals to outside investors and numerous press outlets.  Moreover, Sterling Global, the entity that was supposed to make the acquisitions, was administratively dissolved by the State of Florida in 2010.  Given these facts, Mr. Weintraub could not have had the intention to, or the reasonable belief that he or Sterling Global could, complete tender offers

14

for two corporations for more than $4.5 billion. Again, Mr. Weintraub has not presented affirmative evidence to demonstrate the existence of a genuine issue as to any martial fact with respect his alleged violation of section 14(e) and rule 14e-8. Accordingly, the SEC is entitled to judgment as a matter of law as to its section 14(e) and rule 14e-8 claim.

## V. CONCLUSION

For all of the foregoing reasons, the Court GRANTS summary judgment in favor of the Securities and Exchange Commission that Allen E. Weintraub has violated sections 10(b) and 14(e) of the Securities and Exchange Act and SEC rules 10b-5 and 14e-8. Having resolved the issue of liability, the case will proceed to trial only on the issue of remedies.

DONE AND ORDERED in Chambers, Miami, Florida, December 30, 2011.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record
Allen E. Weintraub, *pro se*
P.O. Box 3952
Hallandale, FL 33008